**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  22-332 (RC) |
| | : | |
| ANTONIO EMORY WILLIAMS, | : | Re Document Nos.:    36, 37, 38, 39 |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTIONS *IN LIMINE*;**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION *IN LIMINE***

## I. INTRODUCTION

In October 2022, Defendant Antonio Emory Williams was indicted by a grand jury of

violating 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm and ammunition after

having previously been convicted of a crime punishable by imprisonment for a term exceeding

one year.  *See* Indictment at 1, ECF No. 1.  The charge against Mr. Williams arose from his

arrest at the Hopkins Apartments in Washington, D.C. on September 20, 2022, during which a

police officer searched a backpack that contained a firearm, ammunition, and Mr. Williams's

photo identification.  *See* Gov't's Mem. Supp. Pretrial Detention at 1–2, ECF No. 3.  The

Government has moved *in limine* to admit evidence of Mr. Williams's other crimes for non-

propensity purposes (ECF No. 36) and to admit certain out-of-court statements made by Mr.

Williams (ECF No. 37).  Further, the Government provided notice that it intends to use one of

Mr. Williams's prior convictions for impeachment purposes should he testify at trial (ECF No.

38).  Mr. Williams, in turn, moved *in limine* to suppress admission of his out-of-court statements

(ECF No. 39).  Subsequent to the filing of these motions, the Government filed a superseding

indictment that, in addition to charging Mr. Williams with violating 18 U.S.C. § 922(g)(1),

further charges him with the unlawful possession of a machine gun in violation of 18 U.S.C. §

922(o) and unlawful possession of a firearm by a felon in violation of 22 D.C. Code §

4503(a)(1).  *See* Superseding Indictment at 1–2, ECF No. 41.  All motions are ripe for

consideration.  For the reasons stated below, the Court grants in part and denies in part the

Government's motions and grants in part and denies in part Defendant's motion.

## II. BACKGROUND

On September 20, 2022, officers with the Metropolitan Police Department of the District

of Columbia ("MPD") observed Mr. Williams standing outside of an entrance to the Hopkins

Apartments, *see* Gov't Mem. Supp. Pretrial Detention at 1, a D.C. Housing Authority

("DCHA") public housing complex in Southeast Washington, D.C., *see* Gov't Opp'n Mot.

Suppress Tangible Evid. ("Gov't Opp'n") at 1, ECF No. 18.  According to the Government,

one of the MPD officers, Officer Ivens Thermidor, recognized Mr. Williams because he had

arrested Mr. Williams at the Hopkins Apartments for the charge of carrying a pistol without a

license ("CPWL") in 2021.  *See id.* at 1–2.  Officer Thermidor also believed that Mr. Williams

had been barred from the Hopkins Apartments.  *See id.* at 2.  Mr. Williams had been the subject

of a DCHA Bar Notice, issued in November 2019, that prohibited Mr. Williams from entering

the "[e]ntire property" and the "[e]ntire block" of the Hopkins Apartments for five years.  Ex. 2

to Gov't Opp'n.[1]

After following Mr. Williams into the Hopkins Apartments, the MPD officers stopped

and handcuffed Mr. Williams in a hallway on the second floor.  *See* Def.'s Am. Mot. Suppress

---

[1] Exhibits submitted by the Government and Mr. Williams were shared with the Court
electronically.

Tangible Evid. ("Def.'s Mot.") at 1–2, ECF No. 17.  Mr. Williams had been holding a black grocery bag that he dropped onto the ground.  *See id.* at 2.  Mr. Williams stated that the black grocery bag contained marijuana.  *See* Ex. 1 to Gov't's Opp'n at 2:36–2:37; *id.* at 2:41–2:42.  Mr. Williams also had in his possession three oxycodone pills.  *See* Gov't's Opp'n at 5.  Shortly after the officers detained Mr. Williams on the second floor, one of the officers, Officer Joseph Solem, found an unattended backpack in the third floor hallway.  *See* Def.'s Mot. at 2; Gov't's Opp'n at 3.  As Officer Solem walked up the stairwell and approached the backpack, he asked Mr. Williams, "Is this your backpack right here?"  Ex. 1 to Gov't's Opp'n at 3:04–3:05.  Mr. Williams replied, "Nah."  *Id.* at 3:06.  Officer Thermidor then said, "Check it out, check it out.  If it's not his, we can check it."  *Id.* at 3:08–3:11.  Officer Brattain, who was detaining Mr. Williams, also said in response to Mr. Williams, "It's not?  That's abandoned property then."  *Id.* at 3:09–3:12.  Mr. Williams then asked, "What you mean?  What is you talking about, huh?  What is you talking about?  What is y'all doing?"  *Id.* at 3:13–3:18.  Officer Thermidor then said, "You said that's not yours, right?"  *Id.* at 3:18–3:19.  Officer Brattain also said, "You said it's not your backpack."  *Id.* at 3:19–3:20.  At the same time, Mr. Williams reiterated, "What is y'all talking, what is y'all doing with my stuff?"  *Id.* at 3:21–3:23.  As he asked what the officers were doing "with [his] stuff," he tried to move toward the stairwell, but was restrained from doing so by Officers Thermidor and Brattain.  *See id.*  Appearing to gesture toward the black grocery bag on the ground, Mr. Williams then also asked the officers, "Why is you messing with my stuff?  What is you doing?"  *Id.* at 3:24–3:26.

As this was occurring, Officer Solem, without a warrant, opened one pocket of the backpack and rifled through its contents.  *See* Ex. 1 to Def.'s Mot. at 00:17–00:28; Def.'s Mot. at 2.  When Officer Solem brought the backpack down from the third floor and into Mr. Williams's

view, Officer Solem asked, "You said this *is* yours?"  Ex. 1 to Def.'s Mot. at 00:41–00:42.

Officer Brattain then interjected, "No, no.  No.  No, he said it's not his."  Ex. 1 to Gov't's Opp'n

at 3:41–3:46.  Officer Solem then opened the backpack again after placing it on the stairwell next

to the second floor hallway.  *See* Ex. 1 to Def.'s Mot. at 00:50–00:54.  As Officer Solem opened

the backpack, Mr. Williams then shouted again, "What you doing?"  Ex. 1 to Gov't's Opp'n at

3:50–3:51.  He also again moved toward the stairwell toward Officer Solem and the backpack,

but was restrained.  *See id.*  As Mr. Williams shouted for someone named "Charlene" and yelled

that the officers were "violating" him, Officer Thermidor went to the backpack, rifled through

the contents of the open pockets, and opened an additional pocket that contained a gun.  Ex. 1 to

Gov't's Opp'n at 3:52–4:47.  The backpack contained Mr. Williams's photo identification and "a

loaded Glock 33 semi-automatic firearm with one round in the chamber and 19 rounds in a high-

capacity magazine capable of receiving 22 rounds."  Gov't's Opp'n at 4.  Per the Government,

"[t]he firearm included a Giggle switch that [the Bureau of Alcohol, Tobacco, Firearms and

Explosives] has since confirmed rendered the firearm fully-automatic."  *Id.* at 5.

As the officers stood outside with Mr. Williams, Officer Thermidor asked another officer,

"Did we get anything on the return yet?"  Ex. 1 to Gov't's Opp'n at 7:08–7:09.  After an officer

responded, Officer Thermidor then appears to have said, "[H]e bars from here anyway."  *Id.* at

7:16–7:17.  After an exchange with Officer Thermidor about what he meant by that statement,

Mr. Williams asked, "But still, why is you messing with me?"  *Id.* at 7:18–7:21.  Officer

Thermidor replied, "You're barred from here."  *Id.* at 7:22.  Mr. Williams responded, "I'm not

barred . . . ."  *Id.* at 7:23.  Officer Thermidor then said, "Yeah, for the gun charge."  *Id.* at 7:23–

7:25.  Later, Officer Thermidor stated to another officer, "I got him for [*unintelligible*] here,

same spot . . . . No, contact the court.  I think the judge bar him from this location . . . ."  *Id.* at

8:52–9:12; *see also* Ex. 4 to Def.'s Mot.  A Weapon Recovery Information Intake Form submitted by Officer Thermidor stated that the gun at issue in this case was recovered as a result of a "[s]earch incident to arrest . . . from the defendant [sic] backpack pocket after he was placed under arrest for unlawful entry."  Ex. 5 to Def.'s Mot. at 1.

  Mr. Williams was charged by complaint in D.C. Superior Court in September 2022, with Unlawful Possession of a Firearm (Prior Conviction).  *See* Gov't's Mem. Supp. Pretrial Detention at 2.  He was then indicted in the U.S. District Court for the District of Columbia in October 2022 on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  *See* Indictment at 1.  Mr. Williams filed a motion to suppress the marijuana, oxycodone pills, and the contents of the backpack, including the firearm, seized as part of his arrest on September 20, 2022, *see* Def.'s Mot., but the Court denied the motion, *United States v. Williams*, No. 22-cr-332, 2023 WL 2894532, at *1 (D.D.C. Apr. 11, 2023).

  The Government has now moved *in limine* to admit evidence of Mr. Williams's convictions in 2003 and 2022 on firearms-related charges for non-propensity purposes, *see* Gov't's Mot. in Lim. Admit Other Crimes Evid. at 4–5, ECF No. 36, and to admit certain out-of-court statements made by Mr. Williams, *see* Gov't's Mot. in Lim. Admit Def.'s Out-of-Court Statements ("Gov't's Mot. in Lim. Admit Statements") at 1–2, ECF No. 37.  Further, the Government provided notice that it intends to use Mr. Williams's CPWL conviction in 2022 for impeachment purposes should he testify at trial.  *See* Gov't's Notice Rule 609 Evid. at 1–2, ECF No. 38.  Mr. Williams, in turn, moved *in limine* to suppress admission of his out-of-court statements.  *See* Def.'s Mot. Suppress Statements at 1, ECF No. 39.

Subsequent to the filing of these motions, the Government filed a superseding indictment that, in addition to charging Mr. Williams with violating 18 U.S.C. § 922(g)(1), further charges him with the unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o) and unlawful possession of a firearm by a felon in violation of 22 D.C. Code § 4503(a)(1).  *See* Superseding Indictment at 1–2.  The Government and Mr. Williams's motions *in limine* are now ripe for consideration.

## III.  LEGAL FRAMEWORK

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of [E]vidence expressly provide for motions *in limine*, the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'"  *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  "Consistent with the historical origins of the practice, motions *in limine* are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"  *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).  In general,

> the Federal Rules of Evidence permit the admission of "relevant evidence"—that is, evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401—provided it is not otherwise excluded by the Rules, the Constitution of the United States, or an Act of Congress, Fed. R. Evid. 402, and its probative value is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

*Id.*  "In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing

any factors against admissibility." *Id.* at 11 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)).

## IV.  ANALYSIS

The Government moves *in limine* to admit evidence of Mr. Williams's convictions in 2003 and 2022 on firearms-related charges for non-propensity purposes, and to admit certain out-of-court statements made by Mr. Williams during his arrest.  *See* Gov't Mot. in Lim. Admit Other Crimes Evid.; Gov't Mot. in Lim. Admit Statements.  Mr. Williams seeks to suppress all of the statements that he made during the arrest.  *See* Def.'s Mot. Suppress Statements.  The Government also provides notice that it intends to use Mr. Williams's conviction in 2022 for impeachment purposes should he testify at trial.  *See* Gov't's Notice Rule 609 Evid. at 1–2.  The Court addresses each of these motions and the notice in turn.

### A.  Other Crimes Evidence

In March 2003, Mr. Williams pled guilty to one count of violating 18 U.S.C. § 922(g)(1) and 924(a)(2) for unlawful possession of a firearm and ammunition after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and was sentenced by Judge Kollar-Kotelly to 57 months of incarceration and three years of supervised release.  Gov't Mot. in Lim. Admit Other Crimes Evid. at 4–5; J. and Commitment with Statement of Reasons, *United States v. Williams*, 02-cr-340-CKK (Mar. 13, 2003), ECF No. 24. In January 2022, Mr. Williams pled guilty to a charge of carrying a pistol without a license in violation of 22 D.C. Code § 4504(a)(2) and was sentenced to 14 months of incarceration and three years of supervised release.  *See* Docket, *United States v. Williams*, 2021 CF2 001799 (Jan. 19, 2022).  The Government seeks to admit certified records of both convictions, in addition to

"evidence of the firearm recovery" in D.C. Superior Court case 2021 CF2 001799.  Gov't Mot.
in Lim. Admit Other Crimes Evid. at 5.

Acknowledging that Federal Rule of Evidence 404(b) bars the admission of evidence of
"other crimes, wrongs, or acts" to prove a defendant's character, the Government argues that this
evidence serves a non-propensity purpose—showing that Mr. Williams was in constructive
possession of the backpack and knowingly possessed the firearm recovered in this case.  *See*
Gov't Mot. in Lim. Admit Other Crimes Evid. at 5–10.  Mr. Williams responds that this
evidence is irrelevant and inadmissible character evidence, given that the Government intends to
argue a theory of actual possession of the backpack, and the evidence must be excluded in any
case because of its prejudicial effect.  *See* Def.'s Opp'n Gov't Mot. in Lim. Admit Other
Crimes Evid. at 2–7, ECF No. 45.

Federal Rule of Evidence 404(b) prohibits the use of "other crimes, wrongs, or acts . . . to
prove a person's character in order to show that on a particular occasion the person acted in
accordance with the character."  Fed. R. Evid. 404(b)(1).  Prior bad acts are permitted, however,
as evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of
mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  This list of permitted uses in Rule 404(b)
of other crimes evidence is not exhaustive.  *United States v. Miller*, 895 F.2d 1431, 1435–36
(D.C. Cir. 1990) (citing *United States v. Moore*, 732 F.2d 983, 987 n.31 (D.C. Cir. 1984)).
Importantly, "Rule 404(b) is a rule of inclusion rather than exclusion," as it prohibits only
evidence "which lacks any purpose but proving character."  *United States v. Bowie*, 232 F.3d
923, 929–30 (D.C. Cir. 2000).  "In short, the rule operates as a prohibition on pure propensity
evidence that cannot serve any other probative purpose."  *United States v. Wilkins*, 538 F. Supp.
3d 49, 70 (D.D.C. 2021).

To determine admissibility under Rule 404(b), the Court must conduct a two-part analysis. *Miller*, 895 F.2d at 1435. First, a court must consider whether the evidence proffered is "probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994); Fed. R. Evid. 404(b). Next, the Court examines whether the probative value is "substantially outweighed" by a danger of unfair prejudice such that the Court should exclude admission. *Miller*, 895 F.2d at 1435 (quoting *Huddleston v. United States*, 485 U.S. 681, 687 (1988)); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Evidence is unfairly prejudicial if it prejudices a defendant's case "for reasons other than its probative value," *United States v. Wallace*, 124 F. App'x. 165, 167 (4th Cir. 2005) (quoting *United States v. Mohr*, 318 F.3d 613, 620 (4th Cir. 2003)), such as by creating "an undue tendency to suggest decision on an improper basis," *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Here, Mr. Williams has been charged with, among other charges, being a felon in possession of a firearm. Superseding Indictment at 1. Though the Government maintains that a jury could find that Mr. Williams was in actual possession of the backpack, it contends that evidence of Mr. Williams's prior firearms convictions supports an alternative theory of constructive possession of the backpack. *See* Gov't's Mot. Lim. Admit Other Crimes Evid. at 7–10. "Criminal possession of a firearm may be either actual or constructive." *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003); *see Henderson v. United States*, 575 U.S. 622, 626 (2015) ("Actual possession exists when a person has direct physical control over a thing . . . .

Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object.").  Under a theory of constructive possession, the Government must prove that a defendant "knew of, and was in a position to exercise dominion and control over" the firearm in question.  *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999)).

The requirement that a defendant had knowing dominion and control over the gun is "heightened" in cases "where the evidence is likely to be that others had access to the locations where law enforcement found the weapon[]."  *United States v. Fields*, No. 18-cr-00267-01, 2019 WL 690347, at *1 (D.D.C. Feb. 19, 2019), *aff'd sub nom. United States v. Tucker*, 12 F.4th 804 (D.C. Cir. 2021) (quoting *United States v. Garner*, 396 F.3d 438, 443 (D.C. Cir. 2005)).  While "mere proximity" does not establish constructive possession, "evidence of some other factor— including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." *Alexander*, 331 F.3d at 127 (quoting *United States v. Moore*, 104 F.3d 377, 381 (D.C. Cir. 1997)) (cleaned up).  Notably, as another court in this District has explained, "[i]t is settled law that, for purposes of Rule 404(b), prior firearm possession by a defendant is probative of his knowledge and intent to possess a weapon when the theory of prosecution is one of constructive possession."  *Fields*, 2019 WL 690347, at *1 (collecting cases).  In fact, "[t]he D.C. Circuit has said that the probative value of a prior weapons offense in such cases is 'high.'"  *Id.* (citation omitted); *see also Cassell*, 292 F.3d at 794–95 ("A prior history of intentionally possessing guns . . . is certainly relevant to the determination of whether a person in proximity to [a gun] on the occasion under litigation knew what he was possessing and intended to do so.").  Consistent with

D.C. Circuit precedent, then, both of Mr. Williams's past convictions for possession of firearms serve a relevant purpose other than proving character or propensity.

Mr. Williams objects that the evidence is "irrelevant to any material issue other than propensity" because the Government has "repeatedly indicate[d]" that it "intends to argue actual possession." Def.'s Opp'n Gov't's Mot. in Lim. Admit Other Crimes Evid. at 4. But the Government's primary focus on proving actual possession does not foreclose it from also arguing constructive possession. *See Garner*, 396 F.3d at 442–43; *United States v. Harris*, No. 19-cr-358, 2020 WL 6484311, at *2 n.1 (D.D.C. Nov. 4, 2020). This case can be distinguished from *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004), to which Mr. Williams cites. The D.C. Circuit in *Linares* held that Rule 404(b) barred admission of evidence that the defendant previously possessed a firearm because "the evidence made it no 'more probable or less probable' that [the defendant] possessed the gun knowingly or unmistakenly, and because the government had no obligation to prove intent." 367 F.3d at 952. The jury in that case "was left either to believe three eyewitnesses' testimony regarding the defendant's *actual* possession of the firearm, or not," given that the prosecution had not advanced a theory of constructive possession. *United States v. Anderson*, 174 F. Supp. 3d 494, 498 (D.D.C. 2016) (citing *Linares*, 367 F.3d at 946–47). By contrast, there is no "disjunctive choice between actual possession or no possession at all" here. *See Garner*, 396 F.3d at 442. A jury could reasonably find here that, despite Mr. Williams's alleged distance from the backpack, he nevertheless exercised "dominion and control" over the firearm inside it. *See Cassell*, 292 F.3d at 792. Accordingly, because the jurors could in this case conclude that Mr. Williams either actually or constructively possessed the firearm (or both), constructive possession is at issue and Rule 404(b) evidence can be introduced. *See Harris*, 2020 WL 6484311, at *2 n.1.

11

The Court must next weigh the probative value of the evidence against the danger of unfair prejudice.  Mr. Williams objects, first, that the 2003 conviction is "too old to be probative of Mr. Williams's current knowledge regarding firearms."  Def.'s Opp'n Gov't's Mot. in Lim. Admit Other Crimes Evid. at 6.  Second, he argues that the circumstances underlying the 2022 conviction—"occurring at the same location, involving the same officer, close in time to each other, and involving a firearm with an alleged giggle switch"—are so similar to the instant case that it is more likely that the jury will misuse the evidence of the prior case.  *Id*. at 6–7.

The age of the 2003 conviction limits its probative value here.  It is true that, in *Fields*, another court in this District held that 16-year-old and 23-year-old gun offenses were not so stale as to "create the kind of *unfair* prejudice that would *substantially* outweigh the evidence's 'high' and 'heightened' probative value" because "[t]he age of a prior weapons offense does not diminish one's present knowledge or intent to exercise dominion and control over a gun."  2019 WL 690347, at *2.  Other circuits have similarly "rejected the suggestion that a temporal bright-line of exclusion should, or could, be drawn for 404(b) evidence."  *United States v. Thorne*, No. 18-cr-389, 2020 WL 122985, at *16 (D.D.C. Jan. 10, 2020) (collecting cases).  But this Court has previously found that a 17-year-old gun conviction was "too old to have significant probative value" in relation to a defendant's present charge for carrying a gun in connection with a drug offense.  *See United States v. Zanders*, No. 16-cr-197, 2019 WL 6329400, at *3 (D.D.C. Nov. 26, 2019).  And in assessing the use of evidence of prior bad acts to "show [a] defendant's knowledge of the type of transactions," the D.C. Circuit has cautioned that the evidence "cannot be stale" and said that evidence from the 1990's did "seem stale" in the context of a prosecution for conduct in 2011 and 2012.  *United States v. Oral George Thompson*, 921 F.3d 263, 269 (D.C. Cir. 2019).  Considering the "very real risk" of prejudice and the D.C. Circuit's concerns about

the potential staleness of 404(b) evidence, the Court finds that the prejudicial effect of the evidence regarding Mr. Williams's 2003 conviction substantially outweighs its probative value. *See Zanders*, 2019 WL 6329400, at *3.

Mr. Williams has not shown, however, that admission of evidence regarding his 2022 conviction presents unfair prejudice that substantially outweighs the evidence's probative value. Mr. Williams cites to a case in which the D.C. Circuit expressed its "concern that the similarity of other act evidence to the charged offense 'increases the danger that the jury will confuse the issues necessary to convict the defendant.'" *United States v. Manner*, 887 F.2d 317, 323 (D.C. Cir. 1989) (citation omitted). But Mr. Williams does not provide any convincing argument as to why the comparison poses *unfair* prejudice *substantially* outweighing the evidence's probative value. After all, the similarity between a prior bad act and the charged conduct is what makes the evidence of the prior act relevant. *See United States v. Slough*, 22 F. Supp. 3d 16, 21–22 (D.D.C. 2014). Mr. Williams has not demonstrated why substantial congruence between a prior bad act and the charged conduct ought to operate against admission of the evidence rather than for it. *Id.* at 21 (quoting *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003)); *see, e.g.*, *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *3 (S.D.N.Y. Apr. 12, 2011) (rejecting defendant's argument that the fact that the Rule 404(b) evidence involves the same type of conduct as that presently charged will unduly prejudice the jury). Finding that there is "no 'compelling or unique evidence of prejudice'" here, *United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (quoting *Cassell*, 292 F.3d at 796), the Court will permit admission of evidence regarding Mr. Williams's 2022 conviction but issue a limiting instruction to the jury on the purpose and proper consideration of the evidence, *see United States v. Jefferson*, No. 20-cr-185, 2021 WL 6196988, at *4 (D.D.C. Dec. 30, 2021).

### B. Out-of-Court Statements

Next, the Government seeks to admit into evidence two statements that Mr. Williams made during his arrest: (1) "What is y'all talking, what is y'all doing with my stuff?" and (2) "What you doing?"  Gov't's Mot. in Lim. Admit Statements at 2.  In turn, Mr. Williams seeks to suppress all of the statements that he made during the arrest, *see* Def.'s Mot. Suppress Statements, and objects specifically to the statements that the Government seeks to admit as having been obtained in violation of his Fifth Amendment rights, *see* Def.'s Opp'n Gov't's Mot. in Lim. Admit Def.'s Out-of-Court Statements ("Def.'s Opp'n Gov't's Mot. in Lim. Admit Statements") at 2–3, ECF No. 46.

"The Fifth Amendment privilege against self-incrimination applies to custodial interrogation by law enforcement," as recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966). *United States v. Mack*, 53 F. Supp. 3d 179, 186 (D.D.C. 2014), *aff'd*, 841 F.3d 514 (D.C. Cir. 2016).  "*Miranda* warnings are required 'where a suspect in custody is subjected to interrogation.'" *United States v. Vinton*, 594 F.3d 14, 26 (D.C. Cir. 2010) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)).  But a police "inquiry of persons not under restraint" does not trigger *Miranda* because those individuals would not be in police "custody."  *Miranda*, 384 U.S. at 477–78.  Moreover, *Miranda* warnings are required only when the officer's questioning rises to the level of an "interrogation," such that "[a]ny statement given freely and voluntarily without any compelling influences" is admissible.  *Id.* at 478.

Where "a reasonable person in the defendant's position would have understood that he was subject to a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest,'" the defendant is "'in custody' for the purposes of *Miranda*."  *United States v. Robinson*, 256 F. Supp. 3d 15, 25 (D.D.C. 2017) (quoting *Stansbury v. California*, 511 U.S. 318,

322 (1994)).  A reasonable person in Mr. Williams's position would also have understood at the time that he was under arrest.  *See id*.  Indeed, the Court has previously found that "Officer Thermidor's seizure of Mr. Williams—by stopping him on the second floor and grabbing him by the arms and torso—constituted an arrest."  *Williams*, 2023 WL 2894532, at *4.  As the Court noted in its prior opinion, "once Mr. Williams was handcuffed by the officers, who then held him by the arms and prevented him from leaving or even moving a few steps, it would have been reasonable for Mr. Williams to understand that he had been arrested, rather than stopped."  *Id.* Mr. Williams was thus "in custody" per *Miranda*, and this analysis turns on the question of whether he made the statements at issue during interrogation by the police officers.

The Government asserts that Mr. Williams did not make the statements at issue in response to any interrogation and that the officers were merely communicating amongst themselves when Mr. Williams made his comments.  Gov't Mot. in Lim. Admit Statements at 2–3.  In support, the Government cites *United States v. Sheffield*, 799 F. Supp. 2d 22 (D.D.C. 2011), in which the court admitted statements made by the defendant because it found that the "comments were not made in response to a question posed by the officers, nor did the officers take any action to which [the defendant's] response was required or expected."  *Id.* at 34.  In that case, which involved officers finding drugs inside a vehicle, the defendant had been handcuffed and was sitting on the curb when he asked why he was being arrested.  *Id.* at 26–27, 34.  A detective responded that the arrest "was because of 'what was in the car,' at which point [the] defendant . . . stated that 'everything is his, everything was his.  That was in the vehicle.'"  *Id.* at 34.  Unprompted by the officers, the defendant also then "became more irritated and started yelling" when the officers led another defendant away from the curb, telling "her not to say nothing, that they didn't have a strong case, they got nothing on us, don't say anything to Ms.

Dudley." *Id.* The court found that the statements were voluntary and did not stem from an interrogation. *Id.* The Government contends that both of Mr. Williams's statements were similarly voluntary and not made in response to officers.

With respect to the first of Mr. Williams's statements at issue—"What is y'all talking, what is y'all doing with my stuff?"—the Government is incorrect in maintaining that, after Mr. Williams denied ownership of the backpack, the officers were merely communicating amongst themselves that the backpack was subject to search when Mr. Williams made his statements. *See* Gov't's Mot. in Lim. Admit Statements at 2–3. As Officer Solem walked up the stairwell and approached the backpack, he asked Mr. Williams, "Is this your backpack right here?" Ex. 1 to Gov't's Opp'n at 3:04–3:05. Mr. Williams replied, "Nah." *Id.* at 3:06. Officer Thermidor then said, "Check it out, check it out. If it's not his, we can check it." *Id.* at 3:08–3:11. Officer Brattain, who was detaining Mr. Williams, also said in response to Mr. Williams, "It's not? That's abandoned property then." *Id.* at 3:09–3:12. Mr. Williams then asked, "What you mean? What is you talking about, huh? What is you talking about? What is y'all doing?" *Id.* at 3:13–3:18. Officer Thermidor then said, "You said that's not yours, right?" *Id.* at 3:18–3:19. Officer Brattain also said, "You said it's not your backpack." *Id.* at 3:19–3:20. At the same time, Mr. Williams reiterated, "What is y'all talking, what is y'all doing with my stuff?" *Id.* at 3:21–3:23.

Based on the Court's review of the evidence, the officers were not simply talking amongst themselves. They were talking to Mr. Williams—with Officer Solem beginning the interaction by asking if the backpack belonged to Mr. Williams, followed by Officers Thermidor and Brattain confirming Mr. Williams's denial seconds later—before Mr. Williams made his statement. Officers Solem and Thermidor specifically asked Mr. Williams whether he owned the backpack. Ex. 1 to Gov't's Opp'n at 3:04–3:05 ("Is this your backpack right here?"), 3:18–3:19

("You said that's not yours, right?").  Because they should have known that these questions were reasonably likely to elicit an incriminating response from Mr. Williams, such questioning is sufficient to constitute interrogation.  *See United States v. Meran*, No. CR 16-222, 2017 WL 4803927, at *22–23 (W.D. Pa. Oct. 23, 2017) (finding a trooper's act of holding up backpacks for each defendant to indicate whether he owned the backpack to be the "functional equivalent of custodial interrogation"); *United States v. Perine*, No. CR 16-01093 MV, 2019 WL 4218463, at *9 (D.N.M. Sept. 5, 2019) (finding that officers' questioning about whether a cell phone belonged to the defendant constituted interrogation).  Mr. Williams's first statement was made under interrogation and without *Miranda* warnings, rendering it inadmissible as part of the prosecution's case-in-chief.  *See United States v. Wills*, 316 F. Supp. 3d 437, 452 (D.D.C. 2018).

With respect to the second of Mr. Williams's statements—"What you doing?"—it appears to the Court that Mr. Williams made the comment upon seeing Officer Solem open the backpack, rather than in response to any questions or statements made by the officers.  *See* Ex. 1 to Gov't's Opp'n at 3:50–3:51; Ex. 1 to Def.'s Mot. at 00:50–00:54.  Officer Solem's opening of the backpack was not an action that he should have known was reasonably likely to elicit an incriminating response from Mr. Williams.  *See Innis*, 446 U.S. at 301–02.  "'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Id.* at 300.  But no "response was required or expected" of Mr. Williams from the mere sight of Officer Solem opening the backpack.  *Sheffield*, 799 F. Supp. 2d at 34.  The officer's actions did "not 'compel' or even encourage" Mr. Williams to make any

statements.  *United States v. Morton*, 391 F.3d 274, 276 (D.C. Cir. 2004).  Mr. Williams's

second statement, therefore, was not made under interrogation and is admissible.[2]

## C.  Conviction for Impeachment

Should Mr. Williams testify at trial, the Government seeks to impeach his testimony

using his 2022 CPWL conviction in D.C. Superior Court.[3]  Gov't's Notice Rule 609 Evid. at 1.

The Government does not specify whether it seeks permission to impeach Mr. Williams only

with evidence of the existence of the prior conviction, or if it would also seek to admit evidence

of the facts underlying that conviction.  But in general, impeachment of a witness using a prior

conviction pursuant to Federal Rule of Evidence 609 is "usually limited to the essential facts

rather than the surrounding details of the conviction."  *United States v. Baylor*, 97 F.3d 542, 544

(D.C. Cir. 1996); *see also, e.g.*, *United States v. McGill*, 815 F.3d 846, 906 (D.C. Cir. 2016);

*United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("Generally, 'only the prior

conviction, its general nature, and punishment of felony range [are] fair game for testing the

defendant's credibility.'" (citation omitted)); *United States v. Villanueva*, 249 F. App'x 413, 418

(6th Cir. 2007) ("It is true that impeachment under Rule 609 is generally limited to the fact of

conviction and should not include the details and circumstances surrounding the conviction.").

Given the lack of indication otherwise, the Court understands the Government to be seeking

---

[2] Although Mr. Williams has moved to suppress *all* of the statements that he made during his arrest, *see* Def.'s Mot. Suppress Statements at 1, the Government has only sought to admit the two statements analyzed in this Opinion, *see* Gov't's Mot. in Lim. Admit Statements at 2. Because the Government does not seek admission of Mr. Williams's other statements, the Court does not consider whether those remaining statements would be admissible and denies the remainder of Mr. Williams's motion.

[3] Although the Government styled its filing as a notice, Mr. Williams filed a response opposing the Government's use of his conviction for impeachment purposes.  *See generally* Def.'s Opp'n Gov't's Notice Rule 609 Evid., ECF No. 47. The Court treats Mr. Williams's opposition as a motion to suppress evidence under Federal Rule of Criminal Procedure 12(b)(3)(C).  *See United States v. Harris*, 491 F.3d 440, 444 (D.C. Cir. 2007).

admission only of the essential facts of the conviction, such as the fact of the conviction and its general nature.  The Court therefore considers the admissibility of such facts.[4]

Under Federal Rule of Evidence 609, evidence of conviction of a crime punishable by imprisonment for more than a year "must be admitted" against a defendant-witness "if the probative value of the evidence outweighs its prejudicial effect."  Fed. R. Evid. 609(a).  Where more than ten years have passed since the witness's release from confinement, evidence of the conviction is admissible only upon a more demanding showing that its "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b).  Balancing probative value against prejudicial effect under Rule 609 "must not become a ritual leading inexorably to admitting the prior conviction into evidence," and the prosecution must show "that the probative value of a prior conviction outweighs the prejudice to the defendant."  *United States v. Lipscomb*, 702 F.2d 1049, 1055, 1063 (D.C. Cir. 1983) (en banc).  In conducting this balancing test, a court considers, among other factors, "the nature of the crime, the time of the conviction, the similarity of the past crime to the charged crime, the importance of the defendant's testimony, and the degree to which the defendant's credibility is central to the case."  *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

As Mr. Williams points out in his opposition, *see* Def.'s Opp'n Gov't's Notice Rule 609 Evid. at 2, the Government has set forth only the barest argument for why the conviction should be admitted, arguing that all felonies have some probative value in determining credibility, *see* Gov't's Notice Rule 609 Evid. at 2.  Nevertheless, the Court agrees that the probative value of

---

[4] The Government may, however, conduct "a greater inquiry into the essential facts surrounding the conviction" if Mr. Williams "open[s] the door to additional inquiry by attempting to 'explain away' the conviction or minimize its significance."  *Tri-State Hosp. Supply, Inc. v. United States*, 471 F. Supp. 2d 170, 174 (D.D.C. 2007).

the evidence of the conviction outweighs its prejudicial effect.  Though Mr. Williams's CPWL conviction does not involve a dishonest act or false statement, "[t]he D.C. Circuit has instructed that 'all felonies have some probative value on the issue of credibility,'" *United States v. Moore*, 75 F. Supp. 3d 444, 455 (D.D.C. 2014) (quoting *Lipscomb*, 702 F.2d at 1062), and that district courts "should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary," *id.* (quoting *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980)).  Moreover, Mr. Williams's testimony "could play a significant role in the jury's verdict" here, *Thorne*, 2020 WL 122985, at *24 (quoting *Moore*, 75 F. Supp. 3d at 455), and the prior conviction may have "substantial probative value in evaluating [his] anticipated defenses" if Mr. Williams were to, for example, deny ownership or knowledge of the gun seized in this case, *id.*

Although "[c]onviction for a prior charge when a defendant is facing pending similar charges may be prejudicial," *Jefferson*, 2021 WL 6196988, at *5 (quoting *United States v. Savoy*, 889 F. Supp. 2d 78, 119 (D.D.C. 2012)), "simply being similar to the charged offenses 'does not render the prior conviction inadmissible' for impeachment purposes," *id.* (quoting *Lewis*, 626 F.2d at 950).  Indeed, "[t]he potential prejudice that comes from admitting [a] same-crime conviction[] is minimal when the jury has already been exposed to [that] prior conviction[] for some other purpose."  *Moore*, 75 F. Supp. 3d at 456 n.12 (citations omitted).  Thus, "where a jury has already heard about a defendant's prior conviction for some other purpose under Rule 404(b), the danger of prejudice by repetition of the evidence for purposes of impeachment is 'negligible.'"  *Thorne*, 2020 WL 122985, at *7 (citation omitted).  In this case, Mr. Williams's CPWL conviction will already be put before the jury as Rule 404(b) evidence, making the

potential prejudice minimal if it is also used to impeach his testimony.  *See Jefferson*, 2021 WL 6196988, at \*5.

## V.  CONCLUSION

For the foregoing reasons, Government's Motions *in Limine* (ECF Nos. 36, 37, and 38) are **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion *in Limine* (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 14, 2023                                            RUDOLPH CONTRERAS
                                                                                          United States District Judge